UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDE TITHOF,

        Plaintiff,

v.                                                Civil Case No. 14-10489
                                                Honorable Linda V. Parker

A.E. REED, J.S. DAME, and
CITY OF OWOSSO,

        Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      Plaintiff filed this lawsuit against Defendants on January 31, 2014, claiming violations of his civil rights when he was arrested pursuant to an outstanding warrant on March 27, 2013.  Defendants A.E. Reed ("Officer Reed") and J.S. Dame ("Sergeant Dame") are employed by the City of Owosso (the "City") (collectively "Defendants").  In his single count Complaint alleging deprivations of his civil rights under 42 U.S.C. § 1983, Plaintiff claims that Officer Reed and Sergeant Dame used excessive force in handcuffing him and were deliberately indifferent to his serious medical needs and that the City is liable for the constitutional violations because it failed to train its officers on the safe and proper use of handcuffs.

      Presently before the Court is Defendants' "Motion to Dismiss and Alternative, Motion for Summary Judgment", filed pursuant to Federal Rules of Civil Procedure

12(b)(6) and 56 on December 22, 2014.[1]  (ECF No. 28.)  The motion has been fully briefed.  The Court finds the legal arguments adequately presented in the parties' papers such that the decision-making process would not be significantly aided by oral argument.  Therefore, the Court is dispensing with oral argument with respect to the motions pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).  For the reasons that follow, the Court grants in part and denies in part Defendants' motion.

## I.   Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which

---

[1] The Court is at a loss for why Defendants style their motion as one for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), as evidence outside Plaintiffs' Complaint is presented in support of and must be considered to evaluate all of their arguments.  Moreover, their attempt to seek dismissal pursuant to Rule 12(b)(6) is untimely as such a motion "must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b); *see also Williams v. State Farm Ins. Co.*, 781 F. Supp. 2d 519, 522 (E.D. Mich. 2011) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004) ("[A] post-answer Rule 12(b)(6) motion is untimely . . ..").

that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

**II.     Factual Background**

On or about March 16, 2013, Plaintiff cut his wrist on a piece of metal when he slipped and fell on ice. (Defs.' Mot., Ex. 1 at 21.) He received stitches at Clinton Memorial Hospital and, six days later, was seen by a hand specialist, Dr. William C. Huettner, M.D. (*Id*., Ex. 2 at 5-10.) Dr. Huettner observed that Plaintiff had a 3.5 cm sutured cut on his right wrist. (*Id*. at 6.) Upon examination, Dr. Huettner diagnosed Plaintiff with a chronic condition called SLAC wrist. (*Id*. at 9.) During his deposition in

this matter, Dr. Huettner described that this condition involves damage to the ligaments that hold the bones in the hand together and results in weakness of the hand. (*Id*. at 9-16.)

Dr. Huettner administered a splint from Plaintiff's right elbow to the base of his fingers on the back of his right hand, with a mesh sleeve or ace bandage securing it.[2] (*Id*. at 15.) He advised Plaintiff to do some exercises and keep the splint on until returning to see Dr. Huettner for surgical intervention and possible tendon repair. (*Id*.)

The evening of March 26, 2013, Plaintiff and his girlfriend went to a restaurant in downtown Owosso for dinner. (Defs.' Mot., Ex. 1 at 41.) Plaintiff consumed two beers during dinner. (*Id*.) Afterward, around 11:00 p.m., Plaintiff walked alone to the Rainbow bar, also in downtown Owosso, where he drank and played pool with a friend, Eric Arnett. (*Id*. at 42, 51.) During his deposition in this matter, Arnett testified that Plaintiff removed the mesh sleeve or ace bandage and splint while playing pool and put it back on thereafter. (*Id*., Ex. 3 at 13, 15.)

That evening, Sergeant Dame and Officer Reed were on foot patrol in downtown Owosso. (*Id*., Ex. 4 at 29.) When they entered the Rainbow Bar, at approximately 1:35 a.m. (now March 27, 2013), Sergeant Dame spotted Plaintiff-- apparently a familiar face to Sergeant Dame-- and recalled that there was an outstanding warrant for his arrest. (*Id*. at 34; Defs.' Reply, Ex. 15.) Sergeant Dame and Officer Reed approached Plaintiff, at

---

[2] As Dr. Huettner explained it, the splint is like a cast (made of plaster that hardens when exposed to water), but it does not go circumferentially around the forearm. (Defs.' Mot., Ex. 2 at 14.) Instead, the splint went on the undersurface of the fingers, the palm, and forearm, terminating below Plaintiff's elbow. (*Id*.)

4

which time Sergeant Dame asked Plaintiff to step outside with the officers. (Defs.' Mot., Ex. 4 at 35.)

Plaintiff offered no resistance and accompanied the officers outside, in front of the bar. (Defs.' Mot., Ex. 1 at 53.) Plaintiff was wearing a leather coat when he exited the bar with the officers. (*Id.* at 52.) The officers testified during their depositions in this matter that Plaintiff was highly intoxicated when the officers encountered him. (*Id.*, Ex. 4 at 60-61; Ex. 5 at 19, 25.)

After confirming with the police dispatcher that the warrant for Plaintiff's arrest was valid, Sergeant Dame informed Plaintiff that he was under arrest. (Defs.' Mot., Ex. 4 at 38.) During his deposition in this matter, Plaintiff testified that when the officers told him to put his hands behind his back for handcuffing, he told them that he just had stitches in his wrist and a pretty bad wound and asked that they not handcuff him. (*Id.*, Ex. 1 at 55-56.) Plaintiff further testified that Sergeant Dame then removed the bandage and cast, put it in Plaintiff's pocket, and handcuffed him. (*Id.*) The officers deny that Plaintiff told them about any sutures or injury prior to being handcuffed. (*Id.*, Ex. 4 at 41-43; Ex. 5 at 25.) Sergeant Dame denied that he removed the sleeve or splint from Plaintiff's forearm. (*Id.*, Ex. 4 at 45-46.)

According to Plaintiff, Sergeant Dame applied the handcuffs "pretty tight" and he immediately started bleeding at the site of his sutures.[3] (Defs.' Mot., Ex. 1 at 56.)

---

[3] In their brief in support of their motion, Defendants state that Sergeant Dame checked to make sure the handcuffs were not too tight by placing his index finger between the cuffs and Plaintiff's wrist. (Defs.' Br. in Supp. of Mot. at 3, citing Ex.

5

Officer Reed noticed that he had a fair amount of blood on his hands and Sergeant Dame witnessed blood on Officer Reed's shirt. (*Id.*, Ex. 4 at 44; Ex. 5 at 27.) Sergeant Dame then noticed the stitches on Plaintiff's right wrist, from where the blood came. (*Id.*, Ex. 4 at 44.) When asked at his deposition whether there were just a trace amount of blood or Plaintiff was bleeding profusely, Sergeant Dame indicated that "it was somewhere in between." (*Id.* at 46.)

Plaintiff began complaining of pain to his wrist and Sergeant Dame removed the handcuffs. (*Id.*, Ex. 4 at 44, 47; Pl.'s Resp. Ex. 7 at 32.) Officer Reed then re-handcuffed Plaintiff with his hands in front of his body. (*Id.*) When reapplying the handcuffs, the officers used two sets, which gave Plaintiff more range of motion between his two arms. (Defs.' Mot., Ex. 4 at 51.) Plaintiff testified that he again complained that the cuffs were too tight. (Pl.'s Resp., Ex. 5 at 58.) The officers apparently did not respond and the handcuffs remained on Plaintiff.

At that point, Officer Reed said something about having a cut on his own wrist and being exposed to Plaintiff's blood. (Defs.' Mot., Ex. 4 at 44.) Concerned about this, the officers secured Plaintiff in Sergeant Dame's patrol car and then drove to the police department to wash themselves up. (*Id.* at 47; Pl.'s Resp. Ex. 5 at 32.) According to Plaintiff, during the ride to the station he kept asking Sergeant Dame to loosen the cuffs. (Pl.'s Resp., Ex. 5 at 61.)

---

4 at 17.) Sergeant Dame did testify that he "always finger space[]s . . . for tightness"; however, he made this statement in response to a question concerning the particular practice used by his police department. (Defs.' Mot., Ex. 4 at 17.) He did not say that in this instance he followed this practice.

When they arrived at the police station, the officers left Plaintiff in the back of Sergeant Dame's patrol car while they went inside. (*Id.* at 59.) According to Plaintiff, he waited for a half hour to forty-five minutes and was in excruciating pain. (*Id.* at 59-60, 88.) Inside the station, Sergeant Dame washed his hands and then obtained hospital forms for the officers to be treated for their exposure to Plaintiff's blood. (Defs.' Mot. Ex. 4 at 48-49.) Eventually Sergeant Dame returned to the patrol car and transported Plaintiff to the hospital. (*Id.* at 48.) Because he had to change his uniform, Officer Reed left the police station for the hospital after Sergeant Dame. (Pl.'s Resp., Ex. 7 at 32-33.)

When Sergeant Dame and Plaintiff arrived at the hospital, Sergeant Dame went inside and again left Plaintiff in the back of the patrol car. (*Id.*, Ex. 5 at 61.) Plaintiff testified that he was in severe pain and, in order to get Sergeant Dame's attention, began kicking the back passenger window of the patrol car. (*Id.* at 61-62.) Sergeant Dame returned to the vehicle and brought Plaintiff inside the hospital's emergency room where he took pictures of Plaintiff. (Defs.' Mot., Ex. 4 at 52; Ex. 7.) According to the hospital record, Plaintiff was admitted at 2:32 a.m. (*Id.*, Ex. 9.)

In the emergency room, Plaintiff's wound was cleansed and treated, he was tested for HIV and hepatitis, and his blood alcohol level was tested. (Defs.' Mot., Ex. 9.) According to Sergeant Dame, Plaintiff's blood alcohol level was tested because he was extremely intoxicated and the jail does not accept individuals with a blood alcohol level above 3.0. (*Id.*, Ex. 4 at 60-61.) Plaintiff's blood alcohol level was .299%. (*Id.*, Ex. 9.) Plaintiff remained handcuffed throughout this period. (Pl.'s Resp., Ex. 5 at 88.) Plaintiff then was transported to the Shiawassee County jail, at which time his handcuffs were

7

finally removed. (*Id*.) Plaintiff was released later that day, when he made bail. (*Id*. at 68.)

In the days that followed, Plaintiff had to return to the hospital because the sutured area had become infected. (*Id.* at 23.) Plaintiff claims that he was administered intravenous antibiotics for three to four days, every six hours, to treat the infection. (*Id*.) Dr. Huettner opined during his deposition that if the skin is broken by the application of handcuffs, there is a chance for infection. (Defs.' Mot., Ex. 2 at 22-24.) He further opined that "[i]f putting handcuffs on opened or reopened a wound, it could have aggravated a previously ongoing infection." (*Id*. at 56.) Dr. Huettner could not say, however, whether the application of handcuffs caused Plaintiff's infection. (*Id*. at 53.)

### III.     Applicable Law and Analysis

Plaintiff alleges that Sergeant Dame and Office Reed violated his constitutional rights by using excessive force (excessively tight handcuffing) when effectuating his arrest and then by being deliberately indifferent to his injuries resulting therefrom. Defendants maintain that the officers did not violate Plaintiffs' rights. Alternatively, they argue that they are entitled to qualified immunity. Plaintiff alleges that the City is liable for the constitutional violations because it lacked a policy regarding handcuff procedures, generally, and handcuffing arrestees with injuries, specifically.

#### A.     Qualified Immunity Generally

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of

state law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013). "Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). A defendant asserting the defense of qualified immunity must satisfy a two-pronged test. *See Pearson v. Callahan*, 555 U.S. 223 (2009).

To satisfy the first prong at the summary-judgment stage, the plaintiff must show that "based upon the applicable law, the facts viewed in the light most favorable to the plaintiff[ ] show that a constitutional violation has occurred." *Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir. 2005); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong requires the plaintiff to show that "the violation involved a clearly established constitutional right of which a reasonable person would have known." *Sample*, 409 F.3d at 696; *see also Saucier*, 533 U.S. at 201. The court may address these prongs in any order, and if the plaintiff cannot make both showings, the state actor is entitled to qualified immunity. *Pearson*, 555 U.S. at 236.

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (internal quotation marks omitted). "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition[.]" *Id.* at 201. The court "need not, of course, find a case in which 'the very action in question has previously been held unlawful,' but, 'in the light of pre-existing law, the unlawfulness must be apparent.' " *Comstock v. McCrary*, 273 F.3d 693,

9

711 (6th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (alterations omitted). " '[T]here need not be a case with the exact same fact pattern or even 'fundamentally similar' or 'materially similar' facts; rather, the question is whether the defendants had 'fair warning' that their actions were unconstitutional.' " *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005) (quoting *Hope v. Pelzner*, 536 U.S. 730, 741 (2002)). "In inquiring whether a constitutional right is clearly established, [the court] must look first to decisions of the Supreme Court, then to decisions of th[e Sixth Circuit] and other courts within our circuit, and finally to decisions of other circuits." *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002), cert. denied sub nom. *Dickhaus v. Champion*, 544 U.S. 975 (2005).

"If the legal question of immunity is completely dependent on which view of the facts the jury accepts, the district court should not grant summary judgment on the issue." *Rodriguez v. Passinault*, 637 F.3d 675 (6th Cir. 2011) (citing *Brandenburg v. Cureton*, 882 F.2d 211, 215-16 (6th Cir. 1989)); *see also Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998) ("[S]ummary judgment is inappropriate where there are contentious factual disputes over the reasonableness of the use of deadly force.")).

### B. Excessive Force

It was well established at the time of the incident at issue in this case that "[t]he Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009) (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)). A plaintiff asserting a handcuffing claim must show: "(1) he or she complained the

10

handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Id*. (citing *Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005)). The Sixth Circuit has found the third requirement satisfied even where the plaintiff's injuries amounted only to numbness and swelling which dissipated after the handcuffs were removed. *See id*. at 402-03 (citing *Martin v. Heideman*, 106 F.3d 1308, 1310 (6th Cir.1997)); *see also Baskin v. Smith*, 50 F. App'x 731, 737-38 (6th Cir. 2002) (denying qualified immunity on summary judgment for excessive force where the plaintiff alleged handcuffing for forty-five minutes to an hour which caused pain and pinched his wrists until they bled). In fact, " '[Sixth Circuit] precedents allow the plaintiff to get to a jury upon a showing that officers handcuffed the plaintiff excessively and unnecessarily tightly and ignored the plaintiff's pleas that the handcuffs were too tight.' " *Morrison*, 583 F.3d at 403 (quoting *Burchett v. Kiefer*, 310 F.3d 937, 944-45 (6th Cir. 2002)).

Viewing the facts in the light most favorable to Plaintiff, as this Court must when ruling on Defendants' summary judgment motion, it finds that Plaintiff has sufficiently established his handcuffing claim. He presents evidence to show that he repeatedly complained that the handcuffs were too tight, both when they were applied behind his back and even after they were removed and reapplied in front of his body. Plaintiff also presents evidence to show that the officers ignored his complaints, leaving him handcuffed in the back of the patrol car for more than a half hour and not removing the handcuffs until Plaintiff eventually was brought inside the jail. During this period,

11

Plaintiff testified that he was in excruciating pain, his sutures had opened, and he was bleeding.

In their reply brief, Defendants urge the Court to apply the holding in *Scott v. Harris*, 550 U.S. 372 (2007), when deciding whether Plaintiff satisfies the third requirement of his handcuffing claim. In *Scott*, the Court advised that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. at 380. In *Scott*, the events in question were caught on videotape and the videotape "quite clearly contradict[ed] the version of the story told by [the plaintiff]." *Id*. at 379.

Defendants contend that Plaintiff's testimony that he incurred ongoing pain due to the handcuffs is rendered incredible by the recent deposition testimony of the emergency room physician who saw Plaintiff on March 27, 2013 (Defs.' Reply, Ex. 12), and the photographs of Plaintiff taken at the hospital while he was being admitted. (Defs.' Mot., Ex. 7). Unlike the videotape in *Scott*, however, this evidence does not "quite clearly contradict" Plaintiff's testimony.

Exhibit 7 is comprised of two photographs, one which shows Plaintiff's face and a second which shows only his wrists. These photographs do not conclusively establish whether or not Plaintiff was experiencing pain.[4] Further, the emergency room physician,

---

[4] Defendants attach other photographs of Plaintiff to their motion in order to establish that the officers could not see Plaintiff's wrists when he had on his leather jacket. (S*ee* Defs.' Mot., Ex. 6.) There is no indication, however, as to when these

Mark S. Thompson, M.D., did not testify that Plaintiff was not in any pain when he saw him. (Defs.' Reply, Ex. 12.) When asked about his notation in the medical record that Plaintiff's "general appearance" showed "no acute distress", Dr. Thompson explained that acute distress generally means the patient is "in like severe extremis in terms of pain or difficulty breathing . . . some signs of either severe, uncontrolled pain or trouble breathing . . .." (*Id*. at 6-7.) This does not rule out that Plaintiff was in some degree of distress or pain.

Defendants also point the Court to Dr. Thompson's affirmative response when asked whether Plaintiff's "demeanor" as pictured in a photograph shown to him "is . . . pretty much the demeanor [he] observed in [Plaintiff] while he was in [Dr. Thompson's] presence".[5] (*Id*. at 7-8.) However, Dr. Thompson testified that he had only a "vague recollection of the individual." (*Id*. at 7.) Perhaps more importantly, it is not at all evident what "demeanor" Dr. Thompson thought the photograph reflected and thus what Plaintiff's demeanor was when Dr. Thompson saw him. Dr. Thompson may not have even understood defense counsel's question to be inquiring about Plaintiff's mental status, as by definition, "demeanor" refers to "behavior toward others: outward manner: conduct." *See* Webster's Third New Int'l Dictionary, Unabridged (2015).

---

photographs were taken. More importantly, Plaintiff is not in handcuffs in these photographs.

[5] It is not evident from the record what photograph of Plaintiff was shown to Dr. Thompson, whether it was the same photograph submitted as exhibit 7 to Defendants' motion or some other picture.

Defendants further argue that the officers are entitled to qualified immunity because, "[a]t the time of this incident there was no precedent in the Sixth Circuit or from the U.S. Supreme Court that forbade an officer from applying handcuffs under these circumstances." (Defs.' Br. in Supp. of Mot. at 12.) In fact, however, there was clear precedent at the time of the incident prohibiting unduly tight handcuffing. *See supra*. Thus it does not matter whether there was precedent concerning the handcuffing more specifically of injured arrestees. Even if Plaintiff's wrist injury is removed from the equation, he presents facts when, viewed in his favor, enable him to survive summary judgment and Defendants' qualified immunity defense.

Moreover, Supreme Court and Sixth Circuit precedent establish that " '[e]xcessive force claims are to be analyzed under the Fourth Amendment's 'objectively reasonable' test . . ..' " *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993), superseded by statute on other grounds as stated in *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397 (6th Cir. 2007) (quoting *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)). The Sixth Circuit has instructed further that "[t]o determine whether the force was excessive," courts must "apply an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants . . .." *Brown v. Lewis*, 779 F.3d 401, -- (6th Cir. 2015) (quoting *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)). Thus in *Walton*, the Sixth Circuit denied qualified immunity to officers who arrested a woman with a shoulder injury because at the time of the incident an officer's use of excessive force was clearly established and a genuine issue of material

fact existed as to whether the officers acted reasonably when applying handcuffs to the woman under the circumstances. *Id*. at 1342.

For these reasons, the Court denies Defendants' request for summary judgment with respect to Plaintiff's excessive force claim.

### C.     Deliberate Indifference

The Fourteenth Amendment's Due Process Clause protects pretrial detainees from deliberate indifference to his or her serious medical needs. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, (1983). The right is "at least as great" as the analogous Eighth Amendment right that convicted prisoners possess. *Id*.; *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 795 (6th Cir. 2005)). The Sixth Circuit Court of Appeals has instructed courts to analyze a Fourteenth Amendment deliberate indifference claim using the same test governing Eighth Amendment claims. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) and *Farmer v. Brennan*, 511 U.S. 825, 835-37 (1994)).

A pretrial detainee's rights under the Fourteenth Amendment's Due Process Clause therefore are violated when: (1) he had a medical need that was "sufficiently serious" in that it posed "a substantial risk of serious harm"; and (2) "the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Farmer*, 511 U.S. at 834; *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). Plaintiff fails to present evidence to satisfy either prong.

15

The Sixth Circuit has defined "a [sufficiently serious] medical need . . . as one 'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " *Jones v. Muskegon Cnty*, 625 F.3d 935, 941 (6th Cir. 2010) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). Plaintiff fails to demonstrate that his "bleeding wound" posed a substantial serious risk of harm" to him. *See Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (swollen, bleeding wrists that had allegedly been handcuffed too tightly do not constitute a "serious medical need"); *Perez v. City of New York*, No. 07-10319, 2009 WL 1616374, at *9 (S.D.N.Y. June 8, 2009) ("Although the use of excessively tight handcuffs can constitute a violation of the Eighth Amendment . . . it appears highly unlikely that . . . pain in the plaintiff's wrists and pain, numbness and swelling in his foot and ankle, would be considered sufficiently serious, in the absence of evidence the plaintiff suffered any lasting injury from the restraints, to rise to the level of an Eighth Amendment violation") (brackets removed). But even if Plaintiff established that the injury to his wrist was sufficiently serious, he fails to show that Defendants were deliberately indifferent to his medical needs as the officers took him to the hospital for treatment within an hour of leaving the bar.

The Court therefore is granting summary judgment to Defendants on Plaintiff's deliberate indifference claim.

### D. *Monell* Liability

Plaintiff claims that the City is liable for Sergeant Dame's and Officer Reed's violations of his constitutional rights. A municipal entity such as the City "cannot be

held liable solely because it employs a tortfeasor-- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, a municipality may be held liable only for those acts which may fairly be said to be its own. *Id.* at 694. Plaintiff asserts that the City is liable for the officers' use of excessive force because it lacked a handcuffing policy, generally, and one for injured arrestees, specifically.

In support of his *Monell* claim, Plaintiff offers the testimony of a "police practices expert", Aaron Westrick, Ph.D.. (Pl.'s Resp., Exs. 4, 8.) Dr. Westrick opines that the City's lack of a policy instructing officers to properly handcuff arrestees behind the back unless injury, medical condition, deformity or extenuating circumstances exist was the moving force behind the violation of Plaintiff's rights. (Pl.'s Resp., Ex. 4 at 2; Ex. 8 at 70.) According to Plaintiff, Dr. Westrick testified that if the City had such a policy, the officers would have had the option not to handcuff the injured Plaintiff; however, lacking such a policy, he believes the officers thought they had to handcuff Plaintiff.[6] (*See* Pl.'s Resp. Br. at 14.)

To hold the City liable under § 1983, Plaintiff "must show that the municipality's policy (or lack thereof) was a 'moving force' in the deprivation of [his] rights and arose from 'deliberate indifference' to [his] rights." *Carey v. Helton*, 70 F. App'x 291, 293 (6th Cir. 2003) (citing *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 508 (1996)); *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (holding that "the inadequacy of

---

[6] Plaintiff cites a portion of Dr. Westrick's deposition testimony in support of this assertion. That portion of the deposition transcript is not attached to Plaintiff's pleading, however.

17

police training may serve as the basis for § 1983 liability," but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."). Specifically, Plaintiff must prove: "that a training program is inadequate to the tasks that the officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) (quoting *Harris*, 489 U.S. at 391). "Liability cannot be imposed unless 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the [governmental body] can reasonably be said to have been deliberately indifferent to the need.' " *Id*. (quoting *Harris*, 489 U.S. at 390) (brackets added in *Hill*).

While the City may not have specific policies governing its officers' use of handcuffs, it does have policies concerning their use of force. (Defs.' Mot., Ex. 10.) Those policies prohibit the use of excessive force. (*Id*. at 17-19.) The officers testified that they had been trained in the use of handcuffs in their respective police academies. (Defs.' Mot., Ex. 4 at 14, 59; Pl.'s Resp., Ex. 6 at 7.) Dr. Westrick in fact acknowledged during his deposition that most officers are trained in handcuffing techniques in the police academy and receive updated training in pressure point control tactics (PPCT) classes, like those Officer Reed and Sergeant Dame have taken. (Defs.' Reply, Ex. 14 at 56-57; Defs.' Mot., Ex. 11.) The officers also testified that they were aware handcuffs can produce injuries, were trained to make sure handcuffs are not too tight, and that they use a "finger" check to do so. (Defs.' Mot., Ex. 4 at 18, 59; Pl.'s Resp. Ex. 7 at 7, 12, 31-

32.) Sergeant Dame recognized that there are circumstances where using handcuffs is not appropriate. (Pl.'s Resp., Ex. 6 at 23-24.) Finally, Plaintiff does not identify any other incident where the City's officers are alleged to have used excessive force in their use of handcuffs or otherwise.

Thus Plaintiff does not present sufficient evidence to suggest that the City was deliberately indifferent to the need for a handcuffing policy or, more specifically, a policy addressing the use of handcuffs on injured arrestees. As such, the Court is granting summary judgment to the City.

## IV. Conclusion

For the reasons stated, the Court concludes that Plaintiff demonstrates a genuine issue of material fact precluding summary judgment to Officer Reed and Sergeant Dame on his excessive force claim. The officers are not entitled to qualified immunity with respect to this claim because it was well established at the time of the incident that applying handcuffs too tightly may constitute excessive force in violation of the Fourth Amendment. Plaintiff fails to show that the officers were deliberately indifferent to a serious medical need in violation of the Fourteenth Amendment's Due Process Clause, however. Thus the officers are entitled to summary judgment with respect to Plaintiff's claim that they violated his Fourteenth Amendment rights. Plaintiff also fails to demonstrate that the City is liable for any alleged constitutional violation.

Accordingly,

**IT IS ORDERED**, that Defendants' motion for summary judgment is

**GRANTED IN PART AND DENIED IN PART**.

                                    s/ Linda V. Parker
                                    LINDA V. PARKER
                                    U.S. DISTRICT JUDGE

Dated: April 8, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, April 8, 2015, by electronic and/or U.S. First Class mail.

                                    s/ Richard Loury
                                    Case Manager